[NOT YET SCHEDULED FOR ORAL ARGUMENT]

NO. 24-7027

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

DARIAN MCKINNEY,

Appellant,

v.

DISTRICT OF COLUMBIA,

Appellee.

---

**REPLY BRIEF OF APPELLANT**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CASE NO. 22-cv-02137
JUDGE AMY BERMAN JACKSON

/s/ Leslie McAdoo Gordon
Leslie McAdoo Gordon
McAdoo Gordon & Associates, P.C.
1629 K Street, N.W.
Suite 300
Washington, DC  20006
(202) 704-7388
leslie.mcadoo@mcadoolaw.com

*Attorney for Appellant McKinney*

<u>**TABLE OF CONTENTS**</u>

**Page**

SUMMARY OF APPELLANT'S ARGUMENT..........................................1

ARGUMENT ............................................................................3

   I.   THE COMPLAINT STATES CLAIMS FOR BREACH OF CONTRACT ........5

   II.   THE COMPLAINT STATES PROCEDURAL DUE PROCESS CLAIMS ........8

     A.   Mr. McKinney's interest in his original DCPS job provides the basis for a due process claim ................................8

     B.   Mr. McKinney had a protected interest in his eligibility for the DCPS positions for which he applied ...............................12

     C.   Mr. McKinney had a protected interest in the jobs at Kelly Miller and Eliot Hine .................................16

   III.   THE COMPLAINT STATES A LIBERTY INTEREST DUE PROCESS CLAIM ....................................................22

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE......................................................34

CERTIFICATE OF SERVICE.............................................................35

i

<u>Table of Authorities</u>

## Cases

*Alley v. Resolution Trust Corp.*, 984 F.2d 1201(D.C. Cir. 1993) ............ 21

*Association of Accredited Cosmetology Schools v. Alexander,*
  979 F.2d 859 (D.C. Cir. 1992) ............................................................. 10

*Bartholet v. Reishauer A.G. (Zurich),*
  953 F.2d 1073 (7th Cir. 1992) ...................................................... 21, 25

*\*Brown v. Sessoms*, 774 F.3d 1016 (D.C. Cir. 2014) ............................... 5

*Campbell v. District of Columbia*, 894 F.3d 281 (D.C. Cir. 2018) .......... 26

*\*Cancel v. N.Y. City Human Res. Admin./Dep't of Soc. Servs.,*
  527 F. App'x 42 (2d Cir. 2013) .................................................. 2, 12, 13

*Da 'Vage v. D.C. Housing Auth.*, 583 F.Supp.3d 226 (D.D.C. 2022) ...... 17

*Dean v. Garland*, 779 A.2d 911 (D.C. 2001) ......................................... 18

*Doe v. George Washington Univ.*, 366 F.Supp.3d 1 (D.D.C. 2018) .......... 7

*Eagle Trust Fund v. United States Postal Service,*
  365 F.Supp.3d 57 (D.D.C. 2019) ............................................................ 8

*Edmond v. U.S. Postal Service Gen. Counsel,*
  949 F.2d 415 (D.C. Cir. 1991) ...................................................... 2, 21

*Entergy Arkansas, Inc. v. Nebraska,*
  225 F.Supp.2d 1047 (D. Neb. 2002) ....................................................... 5

*Felter v. Kempthorne*, 473 F.3d 1255 (D.C. Cir. 2007) ......................... 15

*\*Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995) ....... 16, 17

*Interdonato v. Interdonato*, 521 A.2d 1124 (D.C. 1987) ........................ 18

*Jefferson v. Harris*, 170 F.Supp.3d 194 (D.D.C. 2016) .......................... 18

*Jordan v. Stroughter*, 2022 WL 620119 (6th Cir. 2022) ......................... 11

*\*Kartseva v. Department of State,*
  37 F.3d 1524 (D.C. Cir. 1994)……………………………..2, 3, 22, 25, 26

*\*Lea v. District of Columbia*, No. CV 22-1396 (JEB),
  2022 WL 3153828 (D.D.C. Aug. 8, 2022) .................................. 3, 23, 26

*Authorities upon which Appellant chiefly relies

## Cases con't

*Miller v. Harney County School Dist. No. 4*,
  2008 WL 2783500 (D. Or. 2008) ........................................................ 6

*Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000)) .................................. 5

*Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir. 1989) .............................. 19

*Scharf v. Dep't of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983) .......... 17

*Stana v. School Dist. of City of Pittsburgh*,
  775 F.2d 122 (3d Cir. 1985) ...................................................... 1, 9, 10

*Stone  v. Univ. of Maryland Med. Sys. Corp.*,
  855 F.2d 167 (4th Cir. 1988) ............................................................ 16

*Tinius v. Choi*, 77 F.4th 691 (D.C. Cir. 2023) ...................................... 14

*Tundo v. County of Passaic*, 923 F.3d 283 (3d Cir. 2019) .................... 10

*United States v. Jones*, 58 F.3d 688 (D.C. Cir. 1995) .............................. 6

*United States v. Rapone*, 131 F.3d 188 (D.C. Cir. 1997) ....................... 15

## Other Authorities

Brief for Appellee District of Columbia, *Blue v. District of Columbia
  Public Schools*, No. 14-7189, 2015 WL 2064234 (D.C. Cir. 2015) ....... 14

## Treatises

5B C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (4th ed.) ....... 21

## Statutes and Regulations

D.C. Code § 4-1501.05a(c) ................................................................ 28

5E DCMR § 1006.6 ......................................................................... 13

5E DCMR § 1307.1 ......................................................................... 13

6-B DCMR § 436.8 .......................................................................... 30

6-B DCMR § 439.6 .......................................................................... 30

6-B DCMR § 439.7 .......................................................................... 30

6-B DCMR § 439.8 .......................................................................... 30

## SUMMARY OF APPELLANT'S ARGUMENT

The Complaint states claims for breach of the implied covenant of good faith and fair dealing because it alleges that the D.C. Public Schools ("DCPS") arbitrarily rejected all of Mr. McKinney's job applications on the spurious ground that he had failed a background check. Mr. McKinney's contractual right to apply for re-employment with DCPS included an implied right to have DCPS consider his application(s) fairly and in good faith.

The Complaint also states procedural due process claims because it alleges several cognizable property interests. First, Mr. McKinney had a contractual right to have his applications fairly considered on their merits, *i.e.*, to be "eligible" for hire. By arbitrarily rejecting all of Mr. McKinney's applications, DCPS deprived him of a protected property interest – his eligibility for rehire -- without due process. *See Stana v. School Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985) (a teacher's eligibility for hire can be a protected property interest).

Further, Mr. McKinney had a protected interest in the jobs at Kelly Miller and Eliot Hine schools, because he had interviewed for those jobs and had been *offered and had accepted the positions*. The Complaint

"allege[s] a legitimate claim of entitlement to [these] position[s], subject only to the completion of ministerial tasks prior to his start date." *Cancel v. N.Y. City Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 45 (2d Cir. 2013).

Third, Mr. McKinney had a protected interest in his original job with DCPS. This Court "examine[s] appellants' complaint independently to determine if the factual allegations therein could provide for relief under *any* viable legal theory, even one not mentioned therein." *Edmond v. U.S. Postal Service Gen. Counsel*, 949 F.2d 415, 431 (D.C. Cir. 1991) (Silberman, J., concurring and dissenting) (emphasis in the original). Here, the allegations in the Complaint support the conclusion that DCPS inveigled Mr. McKinney to resign by making contractual promises that it did not intend to keep. A public employee is deprived of due process if his resignation is secured through deceit or misrepresentation.

Finally, the Complaint states a due process claim that DCPS deprived Mr. McKinney of a liberty interest by effectively foreclosing him from teaching at a public school in D.C. Comparable claims of foreclosure from a category of work were found sufficient to support a "stigma" due process claim in *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir.

1994) and *Lea v. District of Columbia*, No. CV 22-1396 (JEB), 2022 WL 3153828 (D.D.C. Aug. 8, 2022). DCPS's argument that Mr. McKinney has waived this claim is specious.

## ARGUMENT

DCPS begins its brief with the misleading smear that it "found [Mr. McKinney] guilty of sexual harassment." (Appellee's Br. at 1). No final adjudication of that false allegation was ever made, however, and Mr. McKinney vigorously contested it. He filed a grievance with the Office of Labor Relations and Employee Management, which was pending when he and DCPS entered into the Settlement Agreement that is the basis of the claims in this case. (Compl. ¶ 27; JA0007, JA0024).

Pursuant to this agreement, Mr. McKinney resigned from his employment with DCPS. In return, DCPS agreed to (1) award him $25,000 per the Excessing options offered to teachers pursuant to Article 4.5 of the Collective Bargaining Agreement;[1] (2) remove any investigation

---

[1] DCPS asserts that "McKinney's position was eliminated, and he was 'excessed' under a process established by the collective bargaining agreement." (Appellee's Br. at 3). This is not entirely correct. In fact, another teacher was assigned to his position, it was not

and notice of the substantiated sexual harassment allegation from his official personnel folder; and (3) allow him to apply for teaching positions at DCPS starting the 2020-2021 school year.  Further, DCPS agreed that, if Mr. McKinney was rehired within one year, (4) he would have no break in service for retirement (pension) purposes; (5) he would be placed on the next salary step for which he was eligible; and (6) he would have his sick leave restored to the date from which he resigned.  (JA0024-25).

Thus, far from finding Mr. McKinney "guilty" of sexual harassment, DCPS agreed to wipe the slate clean with respect to that allegation, paid Mr. McKinney money, and agreed to let him apply for another teaching position the following school year.  The generosity of this settlement belies DCPS's smear about his "guilt."

Mr. McKinney lived up to his end of the bargain, but DCPS did not. In breach of its obligations, DCPS arbitrarily rejected all of Mr. McKinney's ensuing job applications on the spurious ground that he had failed the background check.

---

contemporaneously eliminated.  It appears the parties used the "excess" process to retroactively characterize the action for settlement purposes.

## I.  The Complaint States Claims For Breach Of Contract

The lead counts in the complaint -- and the lead argument on this appeal -- are that DCPS breached its contractual obligations to Mr. McKinney by depriving him of the right to have his applications for re-employment considered fairly and in good faith.  DCPS relegates this issue to the final few pages of its brief, however, in an attempt to brush it off because DCPS has no good arguments to make on this issue.

DCPS  acknowledges, as it must, that "[a]ll contracts in the District of Columbia 'contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000)).  "A party breaches this covenant if it 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party' to the contract." *Id.* (quoting *Paul*).

Accordingly, a contractual right to submit an application includes an implied right to have that application considered fairly and reasonably.  *See Entergy Arkansas, Inc. v. Nebraska*, 225 F.Supp.2d

5

1047, 1143 (D. Neb. 2002); *Miller v. Harney County School Dist. No. 4*, 2008 WL 2783500, at *2 (D. Or. 2008). As this Court has explained, good faith and fair dealing obliges a contracting party to make "an honest and fully informed evaluation" of whether the other party is entitled to a discretionary contractual benefit. *United States v. Jones*, 58 F.3d 688, 692 (D.C. Cir. 1995).

Thus, while Mr. McKinney did not have a contractual right to be rehired by DCPS, he did have a right to have his application(s) for employment considered fairly and in good faith. The implied covenant of good faith and fair dealing required DCPS to exercise its hiring discretion reasonably and fairly.

Here, the Complaint alleges that DCPS arbitrarily rejected all of Mr. McKinney's job applications on the spurious ground that he had failed the background check and then denied him any ability to appeal the supposed background check determination to the neutral Commission on Human Rights. In two of the three instances at issue – the 2020 teaching position at Kelly Miller and the 2021 teaching position at Eliot Hine Middle School ("Eliot Hine") – Mr. McKinney had already interviewed for and been offered the position before DCPS quashed the

6

offer by invoking the supposedly failed background check. Notably, DCPS did not purport to reject any of Mr. McKinney's applications based on its discretion or because it preferred other candidates. Rather, it claimed that there was a non-existent legal barrier to rehiring him.

DCPS argues that Mr. McKinney "does not dispute that he was allowed to apply for reemployment" and that "[n]othing in the contractual terms required DCPS to do anything more." (Appellee's Br. at 53). This hyper-technical interpretation of the contractual terms eliminates the implied covenant of good faith and fair dealing, which required DCPS to consider Mr. McKinney's applications fairly and reasonably. The Complaint plausibly alleges that DCPS did not do so.

DCPS complains that Mr. McKinney seeks to "rewrite the terms of the contract." (Appellee's Br. at 53) (citation omitted). That is false. Mr. McKinney's claim is based on the existing contractual terms, not on new or different terms. "[T]he duty of good faith and fair dealing is an interpretive lens through which courts evaluate the parties' reasonable expectations for the fulfillment of the terms of the contract." *Doe v. George Washington Univ.*, 366 F.Supp.3d 1, 8 (D.D.C. 2018). Mr. McKinney reasonably expected to have his applications for

reemployment considered fairly, not to be arbitrarily rejected on the false pretense that he had failed a background check.  He has asserted a classic claim for breach of the covenant of good faith and fair dealing.

The district court erred in ruling otherwise.


## II.  The Complaint States Procedural Due Process Claims

The Complaint also states viable claims that Mr. McKinney was denied procedural due process by DCPS.  The sufficiency of a due process claim turns on whether "the facts alleged, if true, would establish (1) that 'plaintiff[] w[as] deprived of a protected interest, and, if so,' (2) that [he] failed to 'receive[ ] the process [he] w[as] due.' " *Eagle Trust Fund v. United States Postal Service*, 365 F.Supp.3d 57, 69 (D.D.C. 2019).  DCPS claims that Mr. McKinney did not possess a cognizable property interest, but the facts alleged in the Complaint establish several such interests.


### A.  Mr. McKinney had a protected interest in his eligibility for the DCPS positions for which he applied

Mr. McKinney had a protected property interest in his eligibility for the various teaching positions for which he applied.  DCPS contends that the Settlement Agreement provides only that Mr. McKinney is "allowed

to apply for teaching positions at DCPS," but not that it "somehow agreed to find him 'eligible' for any such position." (Appellee's Br. at 23). This argument is semantic gamesmanship. Indeed, DCPS points out in its brief that teachers who receive a $25,000 cash buyout, as Mr. McKinney did, normally "shall not be eligible for employment with DCPS for a period of three (3) years." (Appellee's Br. at 4) (citation omitted).

By promising that Mr. McKinney could apply, DCPS conferred on him the right to have his applications fairly considered on their merits, *i.e.*, to be "eligible" for hire. Mr. McKinney has never contended that DCPS guaranteed that he would be rehired or that he was exempt from legitimate disqualifications to being hired, such as the background check. Instead, he claims that he had a vested contractual right to apply and be fairly considered for teaching positions (and not to be rejected for illegitimate reasons).

Mr. McKinney's contractual interest in his eligibility for hire is constitutionally protected. In *Stana v. School Dist. of City of Pittsburgh*, 775 F.2d 122 (3d Cir. 1985), the Third Circuit recognized that a teacher has a constitutionally protected property interest in her eligibility to be hired, if she has *a sufficiently firm promise* that she would be eligible. *Id.*

9

at 126.  In contrast, a plaintiff lacks a protected interest in his/her eligibility for hire if the public employer has discretion to remove persons from the eligibility list.  *See Tundo v. County of Passaic*, 923 F.3d 283, 289 (3d Cir. 2019).

This Court has taken a similar approach in evaluating due process claims based on a plaintiff's alleged eligibility for a benefit.  It ruled that a group of schools lacked a vested right in their continued eligibility to participate in the Guaranteed Student Loan program because they were not promised that no changes in eligibility requirements would occur. *See Association of Accredited Cosmetology Schools v. Alexander*, 979 F.2d 859, 864 (D.C. Cir. 1992).  The Court did not take the position advocated by DCPS here, *i.e.*, that eligibility can never be a protected property interest.

In this case, the Settlement Agreement gave Mr. McKinney a binding commitment that he was eligible for re-employment at DCPS. He had a vested right to apply for teaching positions and to have his application considered on its merits by DCPS.  Yet DCPS thrice rejected Mr. McKinney's applications for spurious reasons.  By doing so, DCPS

deprived him of a protected property interest – his eligibility for rehire -- without due process.

DCPS argues that federal circuit courts have "consistently refused to find a property interest in a person's 'eligibility' for a job, promotion, or contract." (Appellee's Br. at 25). But the cases it cites are readily distinguishable. Most involve a plaintiff contending that his or her eligibility gave rise to a protected interest in a particular job, which is not the situation here.

The lead case cited by DCPS involved a basketball coach who was terminated by the Detroit Public Schools (DPS) and then entered into a settlement agreement providing that he "may apply for a coaching assignment with [DPS]." *Jordan v. Stroughter*, 2022 WL 620119, at *4 (6th Cir. 2022). The plaintiff alleged that DPS violated his procedural-due-process rights by not considering his application to be the head coach of the varsity boys' basketball team at one specifically identified high school. *See id.* The Sixth Circuit ruled, unsurprisingly, that "the settlement agreement in no way guaranteed that [plaintiff] would be considered or interviewed for (let alone offered) any [particular] coaching position for which he applied." *Id.*

11

In contrast, Mr. McKinney does not contend that the Settlement Agreement entitled him to any particular position at DCPS or even to be considered for any particular position. Rather, he alleges that he repeatedly applied for and was denied various teaching positions at DCPS – two of which he had already interviewed for and been offered – based on the false rationale that he had failed the background check. Thus, as in *Stana*, Mr. McKinney's claim is that he was wrongfully precluded from being considered for an available position.

## B.  Mr. McKinney had a protected interest in the jobs at Kelly Miller and Eliot Hine

Mr. McKinney also had a protected interest in the jobs at Kelly Miller and Eliot Hine because he had interviewed for each of these positions *and was offered and had accepted the position*. All that remained to be done was completion of the administrative details of the hiring process at DCPS (including the background check). The Second Circuit has held that nearly identical allegations state a due process claim because they establish a claim of entitlement to the particular position, subject only to the completion of ministerial tasks. *Cancel v. N.Y. City Human Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42 (2d

Cir. 2013). The background checks that supposedly derailed Mr. McKinney's hiring were similarly ministerial tasks.

DCPS argues that Mr. McKinney has no property interest in these positions because, even had he been hired, "[a]ll newly hired DCPS teachers serve a one-year probationary period, during which they are subject to termination without cause." (Appellee's Br. at 27). But this probationary period requirement applies only to "[a]n employee <u>initially</u> entering or transferring into the Educational Service." 5E DCMR § 1307.1 (emphasis added). Mr. McKinney was not subject to a probationary period, however, because he previously satisfied this requirement when he started teaching at DCPS in 2015, and the Settlement Agreement specifically provided that he would be deemed not to have a break in his service if he were re-hired. (Compl. ¶ 30; JA0025).

DCPS also argues that school administrators are not authorized to make binding job offers on behalf of DCPS and that only the Chancellor can do so. It contends that "McKinney does not allege that he received any job offers from the DCPS Chancellor or an authorized designee." (Appellee's Br. at 30). But the authority that DCPS cites, 5E DCMR § 1006.6, simply gives the Chancellor formal hiring authority. It does not

establish that school administrators lack delegated authority to make job offers. To the contrary, DCPS argued in another case that it should escape liability because "there is no allegation in the complaint that … then-Chancellor Rhee, <u>rather than a subordinate DCPS official</u>, actually made the decision to hire [a teacher]." Brief for Appellee District of Columbia, *Blue v. District of Columbia Public Schools*, No. 14-7189, 2015 WL 2064234, at *23 (D.C. Cir. 2015)(emphasis added). Here, the allegations in the Complaint, construed in the light most favorable to Mr. McKinney, establish that the job offers he received were made in the normal way and were authorized. DCPS cannot controvert this issue in a motion to dismiss.

Shifting gears, DCPS contends that Mr. McKinney has forfeited any claim based on these job offers because he did not make this argument in the district court. But the authority DCPS cites, *Tinius v. Choi*, 77 F.4th 691 (D.C. Cir. 2023), is inapposite. It held that a right-to-travel claim was forfeited where plaintiffs "neither pleaded nor pressed a right-to-travel claim in the district court." *Id.* at 706. Here, Mr. McKinney clearly pleaded and pressed his due process claims in the district court. The Complaint alleges that DCPS violated his right to due process "by failing

to process his 2021 hiring for the position at [Kelly Miller/Eliot Hine] in accordance with its established, lawful procedures and depriving him of any opportunity to be heard."  (Compl. ¶¶ 109, 113; JA0020-21).  The facts alleged in support of that claim included the job offers that he had already received.

While Mr. McKinney did not cite the Second Circuit's decision in *Cancel* to the district court, that does not preclude him from invoking this relevant precedent on appeal.  This Court has "held that a defendant who had repeatedly demanded a jury trial but failed to cite the relevant statute granting him this right may raise the overlooked legal authority on appeal."  *Felter v. Kempthorne*, 473 F.3d 1255, 1261 (D.C. Cir. 2007).  "'Ignoring relevant precedents discovered on appeal,' we explained, 'could "occasion appellate affirmation of incorrect legal results."'"  *Id.* (quoting *United States v. Rapone*, 131 F.3d 188, 197 (D.C. Cir. 1997)).  DCPS, for its part, also cites numerous authorities to this Court that it did not cite to the district court.  Indeed, it is common for litigants in an appellate court to dig deeper and flesh out their arguments and authorities more fully.  If that were not the case, then appellate briefs would be unnecessary.

15

Neither DCPS's argument that Mr. McKinney lacks a property interest in these teaching positions nor its argument that he has forfeited this claim survive scrutiny.

### C.    Mr. McKinney's interest in his original DCPS job provides the basis for a due process claim

Mr. McKinney also had a constitutionally protected interest in his original job with DCPS.  The Complaint alleges that DCPS induced Mr. McKinney to resign his protected employment by promising that he could re-apply for employment the following year and, if he was re-hired, he would retain his accrued retirement and leave benefits.  However, thereafter, DCPS proceeded to repeatedly foil Mr. McKinney's applications to regain employment.  These allegations support the inference that DCPS never intended to permit Mr. McKinney's return and deceived him to obtain his resignation.  This gives rise to a viable due process claim.

A public employee is deprived of due process if his employer secures his resignation through deceit or misrepresentation.  *See Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995); *Stone  v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988).  "The

question posed at the motion to dismiss stage is simply whether the complaint alleges a claim that is 'plausible on its face"—that is, a claim that the plaintiff (1) relinquished his position … based on his employer's misrepresentations, and (2) was deprived of his job without the benefit of due process." *Da 'Vage v. D.C. Housing Auth.*, 583 F.Supp.3d 226, 235 (D.D.C. 2022).

DCPS suggests that the due process claim recognized in *Hargray* and *Stone* is limited to situations where employees are "forced to make on-the-spot decisions to either resign or face immediate, serious consequences." (Appellee's Br. at 17). This is not so. *Hargray* states that a claim arises "where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee." 57 F.3d at 1568. It cites *Scharf v. Dep't of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983), which explicitly distinguishes between situations where "an employee submits a resignation under time pressure," and where a resignation is "obtained by agency misrepresentation or deception." *Id.* at 1574. *Scharf* states that *both* situations give rise to a due process claim.

Next DCPS contends that Mr. McKinney has released any claim arising out of his right to continued employment with DCPS in the

Settlement Agreement.  But "the mere fact" that Mr. McKinney resigned and released his claims pursuant to the Settlement Agreement "does not preclude his bringing a due-process claim" if he "allege[s] facts sufficient to establish that his resignation was, in fact, involuntary, and thus 'effectively a termination.'" *Jefferson v. Harris*, 170 F.Supp.3d 194, 208 (D.D.C. 2016).[2]  Mr. McKinney has done just that.

DCPS argues that, if it failed to comply with the terms of the Settlement Agreement, Mr. McKinney's "remedy lies with judicial enforcement of the contractual rights he acquired" rather than a due process claim.  (Appellee's Br. at 18).   And it notes that Mr. McKinney has not sought to rescind the Settlement Agreement.  This argument is legally wrong.

> Where a party to an executed contract discovers a material misrepresentation made in the execution of the contract, that party may elect one of two mutually exclusive remedies. He may either affirm the contract and sue for damages, or repudiate the contract and recover that with which he or she has parted.

*Dean v. Garland*, 779 A.2d 911, 915 (D.C. 2001).  Here Mr. McKinney has affirmed the Settlement Agreement and is suing for damages.

---

[2] Likewise, a release procured by misrepresentation will be set aside. *See Interdonato v. Interdonato*, 521 A.2d 1124, 1133-34 (D.C. 1987).

Mr. McKinney's choice to affirm the Settlement Agreement does not absolve DCPS from liability for fraudulently inducing him to enter into it in the first place. DCPS cites *Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir. 1989) for the proposition that a due process claim based on failure to comply with a settlement agreement should be rejected where "if [defendant] had carried through with [its] promises, the settlement would have been satisfactory to [the employee]." (Appellee's Br. at 18). But *Rathjen* did not hold that...

Instead, the Fifth Circuit rejected the employee's due process claim because she had failed to utilize available grievance procedures to contest the employer's failure to comply with its settlement obligations. *See Rathjen*, 878 F.2d at 839-40. The court explained that, because the plaintiff remained an employee and could invoke the grievance procedure, the case was different than its constructive discharge cases, which "rest[] on the premise that once an employee has voluntarily resigned, no procedural remedy is available from his former employer." *Id.* at 839. Far from undercutting Mr. McKinney's due process claim, *Rathjen* supports it because Mr. McKinney, having resigned, had no available procedural remedy from DCPS.

Finally, DCPS argues that Mr. McKinney has forfeited this claim by failing to raise it below.  DCPS contends that the Complaint did not allege a property interest in his prior position, nor did he identify such a property interest in opposition to the motion to dismiss.  However, the Complaint alleges that Mr. McKinney had taught in the DCPS for four school years.  (Compl. ¶ 12; JA0005).  It also alleges that he was engaged in administrative litigation with DCPS (*i.e.*, exercising his due process rights safeguarding that job) as a DCPS employee *at the time he entered into the Settlement Agreement*.  (Compl. ¶ 18; JA0006).  The Complaint specifically points out that Mr. McKinney only ceased to be an employee of DCPS on August 27, 2019 – after entering into the Settlement Agreement. (Compl. ¶ 28; JA0007).  The Settlement Agreement and the collective bargaining agreement between DCPS and Washington Teachers Union – which DCPS says can also be considered (Appellee's Br. at 3)[3] - make clear that Mr. McKinney had tenure (property) protections in his prior position as long as he was an employee.

_____

[3] Appellant concurs that the Court can consider, via judicial notice, the collective bargaining agreement between Mr. McKinney's union and DCPS.

In adjudicating a motion under Rule 12(b)(6), "the district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible legal theory." 5B C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 1357 (4th ed.). Thus, "a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Likewise, when this Court reviews a dismissal under Rule 12(b)(6), it "examine[s] appellants' complaint independently to determine if the factual allegations therein could provide for relief under *any* viable legal theory, even one not mentioned therein." *Edmond v. U.S. Postal Service Gen. Counsel*, 949 F.2d 415, 431 (D.C. Cir. 1991) (Silberman, J., concurring and dissenting) (emphasis in the original). Further, "when a plaintiff has imperfectly stated what may be an arguable claim, … leave to amend is ordinarily in order." *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1207 (D.C. Cir. 1993).

Here the Complaint alleged sufficient facts to support a claim that Mr. McKinney relinquished his position at DCPS based on his employer's misrepresentations, and so was deprived of his job without due process.

If that claim was imperfectly stated, the appropriate remedy is to have Mr. McKinney amend his Complaint, not to dismiss his claim outright.[4]

In sum, the Complaint states three distinct property interests that support Mr. McKinney's due process claims: (1) his contractually guaranteed eligibility to apply and be considered for any vacant DCPS teaching position; (2) his specific interest in the jobs at Kelly Miller and Eliot Hine, which he had been offered and had accepted; and (3) his interests in his original job with DCPS which he surrendered pursuant to the Settlement Agreement. The district court erred in ruling that Mr. McKinney had failed to allege a cognizable property interest to support due process claims.

## III. The Complaint States A Liberty Interest Due Process Claim

The Complaint also states a valid due process liberty interest claim under the "stigma" theory because it alleges facts that are materially indistinguishable from those in *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994) and *Lea v. District of Columbia*, No. CV 22-1396

---

[4]Mr. McKinney requested leave to amend his complaint in his Opposition to the Motion to Dismiss. (Dkt #8 at p. 15).

22

(JEB), 2022 WL 3153828 (D.D.C. Aug. 8, 2022), which upheld stigma due process claims.

DCPS spends multiple pages of its brief addressing two sorts of liberty interest claims that Mr. McKinney has not asserted in this appeal: it argues that the Complaint does not state cognizable claims under (i) the "reputation-plus" theory or (ii) a "stigma" theory based on preclusion from a broad range of professional opportunities, *i.e.*, the second "stigma" category outlined in *Kartseva*. Having refuted these two straw man arguments to its own satisfaction, DCPS acknowledges that, "[o]n appeal, McKinney's sole liberty-interest argument is based on … the 'first category outlined in *Kartseva*.'" (Appellee's Br. at 40).

As for this argument, DCPS first contends that Mr. McKinney has waived it. DCPS re-labels the two categories of "stigma" claims identified in *Kartseva* as "stigma plus" and "debarment," although it admits that this Court describes both as a "stigma" claim. (Appellee's Br. at 32 n.8). DCPS contends that Mr. McKinney pursued a "stigma plus" claim in the district court but is now pursuing a "debarment" theory in this Court, and that he "forfeited this claim by failing to raise it the district court."

(Appellee's Br. at 32). This forfeiture argument is constructed out of whole cloth.

The Complaint alleges that DCPS's actions "preclude [Mr. McKinney] from obtaining employment in his chosen field by educational institutions *in D.C.*, whether public or private." (Compl. ¶ 93; JA0017). (Emphasis added). He argued to the district court that he "was completely precluded from obtaining any teaching position in any public school *in the District*." (Dkt. #8 at p. 11; emphasis added). The court recognized that Mr. McKinney could establish a "stigma" claim by showing that DCPS's actions either "(a) automatically exclude[] [him] from a definite range of employment opportunities... or (b) broadly preclud[e] [him] from continuing in [his] chosen career." (JA0042) (quoting *Kartseva*, 37 F.3d at 1527).

The court ruled that the Complaint did not establish a claim under either category, reasoning that "the fact that plaintiff currently teaches and coaches at a public school in Maryland undermines the stigma claim." *Id.* This rationale addresses the second form of stigma claim, but not the first, *i.e.*, Mr. McKinney's preclusion from teaching *in D.C.* But that omission can't be attributed to Mr. McKinney, as DCPS attempts to

24

do; the stigma claim Mr. McKinney presented to the district court is the same claim he presents here.

Furthermore, a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet*, 953 F.2d at 1078. So long as the allegations of the Complaint establish a form of due process claim, it is immaterial if Mr. McKinney's theory of that claim is correct or incorrect. Thus, there is no basis to contend that Mr. McKinney has forfeited his due process claim.

DCPS ultimately argues that the Complaint doesn't state a stigma claim under the first *Kartseva* category because it doesn't allege that DCPS made a formal, binding decision that automatically excluded him from teaching positions. However, no formal decision is required. As this Court explained, "no *official* debarment action … was taken against Kartseva—indeed, had it been, she would have been entitled to procedural safeguards mandated by regulation." *Kartseva*, 37 F.3d at 1528 (emphasis in the original). Nonetheless, "[i]f State [Department's] determination was intended to exclude Kartseva from future government work—on State's contracts with [her employer] or State's contracts more generally—then that determination would effect a change in status and

implicate a liberty interest." *Id.* More recently, the Court has elaborated that "[t]he foreclosure element of a stigma-plus claim affords a level of discretion to juries" as to what facts constitute sufficient foreclosure. *Campbell v. District of Columbia*, 894 F.3d 281, 290 (D.C. Cir. 2018).

To state a stigma claim, a "[c]omplaint must allege that the plaintiff has been effectively 'foreclosed' from some category of work." *Lea*, 2022 WL 3153828, at *6. In that case, the court found the complaint sufficient because it alleged that, "after the [D.C.] government deemed [plaintiff] unsuitable for the General Counsel position, she was 'completely foreclosed' from 'any real prospect of pursuing employment with the District of Columbia government'"; that "[s]he applied to numerous jobs but was offered no interviews"; and was "automatically determined to be 'unsuitable' and disqualified for any such positions." *Id.* The court ruled that these allegations "sufficiently establish that the government's failure to hire Lea formally or automatically exclude[d] her from legal positions in the D.C. government." *Id.* (internal quotation marks omitted).

The Complaint in this case is far more detailed than the one in *Lea* and every bit as sufficient. It alleges that Mr. McKinney repeatedly

applied for and was denied various teaching positions *at DCPS* – two of which he had already interviewed for and been offered – based on the false rationale that he had failed the background check. Further, he was denied any ability to appeal the supposed background check determinations to the neutral Commission on Human Rights. It alleges that *DCPS personnel* were instructed by their superiors not to effectuate the hiring of Mr. McKinney. (Compl. ¶ 76; JA0014). And it alleges that DCPS's action "preclude him from obtaining employment in his chosen field by educational institutions *in D.C.*, whether public or private." (Compl. ¶ 93; JA0017). (Emphasis added).

DCPS attempts to dispute the sufficiency of the Complaint by making disingenuous arguments about the background checks that Mr. McKinney supposedly failed. First, it argues that Mr. McKinney's allegation that no background check had actually been conducted "belie[s] any inference that DCPS formally determined that McKinney failed a background check and was thus ineligible for employment." (Appellee's Br. at 42). This argument is too clever by half. The allegation that no background check was actually conducted does not mean that DCPS did not debar Mr. McKinney from employment. Rather, the

27

Complaint alleges that Mr. McKinney was *de facto* debarred – he was systematically barred from all the D.C. positions he sought and fed the false story that he had failed the background check to cover it up.

Next, DCPS argues that, if it did formally determine that Mr. McKinney failed his background check, that decision would only have excluded him from one teaching position and could only be relied on to exclude him from other positions for a period of one year. These limitations, DCPS contends, mean an adverse background check determination cannot rise to the level of a liberty-interest deprivation. This argument is irrelevant because it assumes facts contrary to the allegations in the Complaint, which a movant for dismissal may not do.

Finally, DCPS argues that Mr. McKinney's claim fails because, even if he had a protected liberty interest, he "was provided all the process he was due: an opportunity to appeal to a neutral adjudicative body." (Appellee's Br. at 47). DCPS cites the Background Check Act, which provides that, "[i]f an application is denied because the applicant presents a danger to children or youth, the [personnel authority] shall inform the applicant in writing and the applicant may appeal the denial to the Commission on Human Rights." D.C. Code § 4-1501.05a(c). DCPS

brazenly contends that it complied with these requirements and that Mr. McKinney failed to avail himself of his appeal rights. This argument is specious.[5]

The Complaint alleges that, in fact, no background check of Mr. McKinney was ever conducted during any of the three episodes at issue: the Kelly Miller position in 2020 (Compl. ¶ 35; JA0008), the positions he applied for in early 2021 (Compl. ¶ 55; JA0011,), or the Eliot Hine position in 2021 (Compl. ¶¶ 66, 67; JA0013). Assuming the truth of these allegations, it would have been impossible for Mr. McKinney to appeal a non-existent background check.

The Complaint also alleges, in the alternative, that if DCPS did conduct these background checks, the agency did not follow the requisite procedures to enable Mr. McKinney to appeal the suitability determinations.[6] (Compl. ¶ 73; JA0014). It alleges that the DCPS Office

---

[5] DCPS did not make this argument below. Rather, it contended that "DCPS's failure to follow its own procedures does not give rise to a constitutional deprivation." (Dkt. #7 at p. 7).

[6] Because Mr. McKinney had twice previously appealed background check decisions to the Commission, he knew that he needed to receive a written notice of the decision (that would also bear the appeal rights instructions), which he was required to provide to the Commission as part of his appeal. (Compl. ¶¶ 14 23; JA0005-6). He repeatedly contacted

of Security actually performs the background check and determination, and sends a paper, written notice of its determination, accompanied by instructions for the appeals process which advise the candidate: (a) where to submit a written request for an appeal, *i.e.*, the Commission, (b) the materials required for noticing an appeal, and (c) the deadline by which to do so. (Compl. ¶¶ 40-43; JA0009-10,).[7]

The Complaint further alleges that this process was not followed, however, with respect to any of the three episodes at issue in this case. Instead, after Mr. McKinney was offered the 2020 teaching position at

_____

DCPS in a futile effort to obtain that notice so that he could appeal the supposedly failed background checks. (Compl. ¶¶ 48-49, 57-60, 69-70; JA0010, JA0012, JA0013).

[7] These allegations outlining the DCPS process align with the governing regulations. If an appointee is deemed unsuitable, he "shall be notified of the final suitability determination." 6-B DCMR § 436.8. Any appeal must be submitted to the Commission on Human Rights no more than 30 days following the date of the suitability determination. *Id.* § 437.3(a). An appeal is made by filing a notice of appeal that must include a copy of the suitability determination, the specific objection(s) to the determination, and the argument(s) in support of petitioner's appeal. *Id.* §§ 439.6, 439.7. The agency then files an answer along with a certified copy of the record. *Id.* § 439.8. The Commission reviews the respective arguments of the parties along with the agency record, and issues a decision based exclusively on the notice of appeal, and the agency's answer and record. *Id.*

Kelly Miller, he was advised by email that the DCPS Career Office – which does not conduct background checks -- had been informed that the DCPS Office of Security had found him ineligible because of an allegedly "failed" background check. (Compl. ¶ 34; JA0008). Mr. McKinney never received any written notice from the DCPS Office of Security about this supposedly "failed" background check, nor any instructions for appeals rights and procedures. (Compl. ¶ 47; JA0010).

In early 2021, when Mr. McKinney applied for other positions at DCPS, he again received email advisements from the DCPS Career Office that the DCPS Office of Security had deemed him ineligible for hire due to a "failed" background check, even though he had not yet interviewed for the position, been offered or accepted a position, or been submitted for background check processing. (Compl. ¶ 52; JA0011). Finally, after he was offered the 2021 teaching position at Eliot Hine, he again received emails from the DCPS Career Office stating that it had been advised that the DCPS Office of Security had determined he was not eligible for hire because of a "failed" background check. (Compl. ¶ 65; JA0013). But Mr. McKinney never received a notice from the DCPS Office of Security of a final suitability determination with respect to any of these episodes,

31

although he has resided at the same address and there is no reason he should not have received any notice had it been sent. (Compl. ¶ 72; JA0014).

DCPS cannot overcome these detailed allegations and secure the dismissal of Mr. McKinney's claim by merely pointing to the provision in the Background Check Act that creates the right of appeal and asserting in conclusory fashion that it has complied with its obligations under the statute.

Accordingly, the Complaint states a claim for a "stigma" due process violation, and the district court erred in ruling otherwise.

## CONCLUSION

The district court erred in dismissing Mr. McKinney's claims for breach of the Settlement Agreement and deprivation of due process. Its decision should be reversed.

Dated:  October 15, 2024                Respectfully submitted,


*/s/ Leslie McAdoo Gordon*
Leslie McAdoo Gordon
McAdoo Gordon & Associates, P.C.
1629 K Street, N.W.
Suite 300
Washington, DC  20006
(202) 704-7388
leslie.mcadoo@mcadoolaw.com

*Attorney for Appellant McKinney*

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's Reply Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(a). Excluding the Table of Contents, Table of Authorities, the Glossary, the Addendum of Pertinent Statutes and Regulations, and counsel's Certificates, this Brief contains 6,429 **words**, including footnotes. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface in **Microsoft Word 2003** using **Century, 14-point font**.

Dated:  October 15, 2024                  Respectfully submitted,

/s/ Leslie McAdoo Gordon
Leslie McAdoo Gordon
McAdoo Gordon & Associates, P.C.
1629 K Street, N.W.
Suite 300
Washington, DC  20006
(202) 704-7388
leslie.mcadoo@mcadoolaw.com

*Attorney for Appellant McKinney*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, copies of the foregoing Appellant's Reply Brief were served by electronic means using the Court's CM/ECF system upon the following:

> Brian L. Schwalb
> Attorney General for the District of Columbia
> Caroline S. Van Zile
> Deputy Solicitor General
> Ashwin P. Phatak
> Principal Deputy Solicitor General
> Holly Michelle Johnson
> Assistant Attorney General
> Thais-Lyn Trayer
> Assistant Attorney General
> 400 6th Street, N.W.
> Washington, D.C. 20001

/s/ Leslie McAdoo Gordon

Leslie McAdoo Gordon

*Attorney for Appellant McKinney*